(No. 10945.—Reversed and remanded.)
CHRISTOPH RASCH, Appellee, vs. CHRISTIAN A. RASCH,
Appellant.

*Opinion filed April 19, 1917.*

1. DEEDS—*what is sufficient consideration for conveyance from a parent to a child.* A consideration of one dollar and natural love and affection is sufficient to support a conveyance from a parent to a child.

2. SAME—*burden is on complainant to show that deed absolute on its face was intended as a mortgage.* The burden of proof is upon the complainant in a bill to set aside a deed to prove his claim that the deed, which is absolute upon its face, was intended as a mortgage, and the evidence must be clear and convincing.

3. RES JUDICATA—*when decree registering title is a bar to bill to set aside deeds.* Where a father conveys land to his children, who in turn convey their interests to one of their number as trustee, who makes application to register his title as trustee, the decree registering such title will bar a bill by the father to set aside the deeds where he was an occupant of the land at the time the application to register title was filed, and, under the statute, was therefore a necessary party to such proceeding but does not appear to have taken any action therein.

4. EVIDENCE—*when testimony in support of an amendment to a sworn bill will be given little weight.* Testimony in support of an amendment to a sworn bill will be given little weight where the amendment is not sworn to, is contradictory to the facts alleged in the original bill and sets up facts which must have been known to the complainant at the time of the filing of the original bill, which was in his possession several days before subscribing and swearing to it and where such testimony is contradicted by the defendants.

5. MASTERS IN CHANCERY—*when allowance to master for examing questions in issue is excessive.* An allowance of $250 to a master in chancery in Cook county for five days spent in securing files, considering the evidence, hearing arguments and making up his report in a case where a part of six different days was consumed in taking the testimony is excessive.

6. SAME—*party against whom master's fees have been taxed as costs should not be deprived of right of appeal by summary contempt proceedings.* Under the statute the master's fees in a chancery suit are in the nature of costs and should be allowed and taxed as such, and any party who deems himself aggrieved either in respect to the amount allowed or as to the party against whom they

are taxed has his right of appeal from that portion of the decree fixing and taxing such costs, and should not be deprived of this right by summary contempt proceedings to enforce the decree.

7. SOLICITORS' FEES—*solicitor's fees cannot be taxed as costs in chancery in absence of statute.* Solicitor's fees cannot be taxed as costs against the unsuccessful party in a chancery suit in the absence of a statute making provision for such allowance.

8. COSTS—*when costs should not be paid out of the trust fund.* Where a father conveys land to his children upon the agreement that the property is to be theirs absolutely if they pay the debts of the father and furnish support for himself and wife, and the children subsequently convey their interests to one of their number as trustee, who registers his title as trustee, the fund in the hands of such trustee after selling a portion of the property and paying the father's debts should not be charged with any portion of the costs properly chargeable to the. father in his subsequent proceeding to set aside the deeds, where no claim is made that the children are not keeping their part of the agreement.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

FRANK FOSTER, for appellant.

FRED PLOTKE, (FRANK MEIER, of counsel,) for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This is an appeal by appellant, Christian A. Rasch, individually and as trustee, to review a decree of the circuit court of Cook county in favor of appellee, Christoph Rasch, setting aside certain deeds made by him to his children, Christian A. Rasch, Herman Rasch, Theodore Rasch, Adolph Rasch and Rosalie Rasch, and certain deeds by said Herman, Theodore, Adolph and Rosalie Rasch to Christian A. Rasch, trustee, made pursuant to a trust agreement entered into between them. The decree also stated an account between Christian A. Rasch and appellee, appointed a receiver to take charge of the property of the alleged trust, and directed the payment therefrom of $451 as mas-

ter's fees, $750 as fees to solicitors for appellee, and the balance of the funds to appellee. A writ of error has also been sued out to review the same decree and is docketed in this court as No. 10946. A motion was made to consolidate the two cases at a former term, which motion was allowed, and the case has been submitted on the briefs and arguments filed in the appeal case. Sixty-two errors have been assigned on the record in the two cases, and are sufficiently numerous and specific to present for review every question properly arising on this record.

Complainant filed his sworn bill in chancery in the circuit court of Cook county to set aside five deeds made by him to his said children, Christian A., Herman M., Theodore, Adolph and Rosalie Rasch, of lots 176, 177, 178, 179 and part of 188, and a strip of land 150 feet wide in Westfall subdivision of section 30, township 38, north, range 15, east, all in the city of Chicago, and certain deeds made by his children to Christian A. Rasch pursuant to a trust agreement by which the property was conveyed by them to Christian A. in trust. The bill alleges that the conveyances made by the complainant to his children, respectively, were without any good or valuable consideration and were secured by falsely and fraudulently representing to him that he was about to become defendant in several suits at law for personal injuries, whereby he would lose all his real estate; that fearing the same to be true, and trusting in his children, he conveyed all of said real estate to them, and he prays that the deeds may be declared null and void and a cloud on his title and that they be set aside and canceled. The bill further charges that the children conveyed their respective interests to Christian A. Rasch in trust, and that such proceedings were had by him under the Torrens act that a decree was entered confirming the title in him as such trustee, and prays that these deeds be set aside and canceled, that Christian A. may be required to account for all funds received by him by virtue of the deeds and the dec-

laration of trust above mentioned and removed as trustee and a receiver appointed, and that an injunction issue restraining defendants from transferring or disposing of the property. The bill was subsequently amended by eliminating all claim to four lots sold by Christian A. Rasch, as trustee, to the city of Chicago, and by striking out the allegation that the deeds were procured by false and fraudulent representations and inserting in lieu thereof the' allegation that they were without any good or valuable consideration and were executed for the purpose of securing defendants for money loaned and advanced to complainant, and for the further purpose of enabling defendants to dispose of certain portions of the real estate so as to reimburse them for such loans and advancements and to liquidate the claims and debts of complainant, and that upon full payment of such debts and advancements and other obligations such portions of the real estate as remained unsold, together with any money remaining from the sale of any part of the real estate, were to be returned to complainant. This amendment was not sworn to.

Defendants answered the original bill, denying the deeds were without a valuable consideration or that they were procured by means of false and fraudulent representations, and alleging that for some years complainant had been unable to keep up the interest on mortgages and pay the insurance, taxes and special assessments from time to time levied on the property; that during the year 1913 a special assessment of $2100 was levied on the property, which he had no means of meeting and pay the taxes and interest on the incumbrances; that on August 10, 1913, Elizabeth Costello, while attending a picnic on a certain part of the premises, was injured, for which injury a suit for damages was about to be brought against complainant; that because of these matters an agreement was made on August 12, 1913, whereby, in consideration of one dollar and natural love and affection and the reasonable mainte-

nance and support of complainant and his wife during the remainder of their lives, the property was conveyed to defendants, who assumed and agreed to pay all incumbrances, special assessments, taxes, insurance, etc., on the property and provide such suitable maintenance and support, etc.; that pursuant to that agreement deeds were executed conveying certain portions of the above described premises to each of said children, who thereafter conveyed their respective interests to Christian A. Rasch, as trustee, for the purpose of carrying out this agreement; that the title to the property was registered in Christian A. Rasch, as trustee, under what is commonly known as the Torrens act; that later a portion of the property was sold to the city of Chicago for $16,500; that all debts of the complainant were paid, including the incumbrances and special assessments on the property, leaving a balance of some $4300, which they loaned, and from the proceeds of which they have been paying complainant $35 per month for the purpose of maintaining and supporting himself and wife. After the bill was amended a further answer was filed denying the allegations that the deeds were made for the purpose of securing defendants for money advanced or to be advanced and to enable them to sell the property, or a portion of it, to reimburse themselves for such advancements and to pay the claims and debts of complainant and the mortgages and special assessments, etc., against the property, or that it was agreed that when such things were done the balance of the property remaining should be re-conveyed to complainant, and reiterated the allegations made in the former answer with regard to the consideration of the deed being love and affection and the discharging of the incumbrances, taxes and special assessments on the property and the support and maintenance of complainant and his wife during the remainder of their lives, etc.

A replication was filed to the answers and the cause referred to a master in chancery to take the proofs and re-

port the same, together with his conclusions as to the law
and facts. A hearing was had before the master, who made
his report, making numerous findings of fact. The mas-
ter found the issues in favor of complainant and stated an
account between him and defendants and recommended that
a decree be entered accordingly. Objections were filed to
the master's report, which were overruled and ordered to
stand as exceptions in the circuit court. On the hearing
in the circuit court all exceptions were overruled and a de-
cree was entered approving the master's report and finding
that there was $3019.95 in the hands of Christian A. Rasch,
as trustee; that the same was now due complainant, less
$451 theretofore ordered paid to the master in chancery in
full of his fees and $56.19 expended for the use of com-
plainant; that there had been deposited with the circuit
clerk by the Chicago Title and Trust Company, receiver,
the sum of $2512.76; that since such deposit had been
made there had been expended from that sum for the use
of complainant, for his actual costs and expenses of liti-
gation and attorneys' fees, the sum of $750, and that the
remainder of the fund in the hands of the clerk is the
property of complainant, and directed the clerk to pay the
same to him upon the entry of the decree. It further or-
dered a re-conveyance by defendants of lots 177 and 179,
except the north 50 feet of the west 150 feet in division 1
of Westfall subdivision, to complainant, and in case of
failure to make such conveyance within ten days that the
master execute such conveyance; that an injunction issue
restraining defendants, and each of them, from in any man-
ner interfering with or molesting complainant or his suc-
cessors in title, or any person claiming through or under
him, in the peaceable use, possession and occupation of said
premises, and taxed the costs against defendants. From
this decree defendants, and each of them, prayed a joint
and several appeal to this court, which was allowed and the
appeal perfected.

At the time of the transaction in question Christoph Rasch was about seventy-six years of age and had not been actively engaged in business for some years. For about twenty-four years he had lived with his wife and daughter, Rosalie, on the property known as 7859 South Shore drive, in the city of Chicago. The family home occupies one lot, and there is a small grove on part of the land, which had been fitted up as a picnic grove. There was also a small tract from which sand was sold. For some years appellee maintained himself and family by keeping roomers and boarders, renting out the picnic grove and by the sale of sand. His income from these sources was approximately $300 or $400 a year. All of his property was mortgaged, so that his yearly income was insufficient to enable him to maintain and support himself and family, keep up the interest on his mortgages and pay the insurance and taxes and special assessments on his property. At one time he had owned other property in Chicago which had been subject to heavy mortgages and which he had lost because of his inability to meet such obligations. At the time he conveyed this property to his children a special assessment of $2100 had just been levied against the property, payable in five annual installments, and this, with his other debts and obligations, made his total indebtedness in the neighborhood of $12,000. For some time he had been endeavoring to sell part of this property to the city of Chicago but had been unable to do so, and at this time his affairs were in such condition that he felt he would be unable to meet the special assessment and his other obligations and was apt to lose all of his property. On August 10, 1913, a picnic was held in his grove at which a girl was injured by falling from a swing, and she had made a claim for $200 damages. The day before the deeds were executed, his son Herman, who resided at Dixon, Illinois, came to see his parents, which visit was made the occasion for a family gathering at the father's house. On that occasion appellee took the

sons out to the picnic grove and explained to them how the girl was injured, and also told them of the special assessment against his property, his inability to meet it and his other obligations, and discussed in a general way what he should do about his property. At that time such arrangements were made that on the following day appellee and his wife conveyed all of their property to their children, making a separate conveyance to each child and substantially an equal division of the property among them. Under this arrangement the house in which appellee and his family resided was conveyed to Theodore and the daughter, Rosalie, who was at that time residing with her parents.

Appellee was the only witness in his behalf. With respect to the circumstances leading up to the making of the deeds in question he testified that he had thought of deeding the property to his boys at the time the special assessment was levied; that for some years the children had made loans on the property and aided him in paying the interest, taxes, insurance, etc.; that when the special assessment for $2100 came due he was afraid he would lose his property and for that reason wanted to turn it over to them. He further testified: "I would give it to them or lose the property; I mean I thought I couldn't carry it and pay the specials; I was afraid I would lose the property if I didn't do it." He also testified that the children told him that the claim of the girl for damages would not amount to very much, and that at the time the deeds were made nothing was said about that matter or that he was apt to lose his property on account of that claim; that before he signed the papers he said to the boys he wanted the property back as soon as it was sold, or a part of it; that he gave the property to them with the understanding that after it was sold to turn what was left back to him. His testimony in this respect is sharply contradicted by the allegations of his original sworn bill, in which he says nothing at all about any of these matters, and also by the testimony of Chris-

tian A. and Theodore Rasch that their father told them that he would be unable to take care of the special assessment and pay the taxes, insurance and interest on the incumbrances; that he wanted the children to take care of it for him and in turn he would deed the property to the children, and they, in turn, were to attend to those matters and provide support and maintenance for himself and wife for the remainder of their lives; that the children agreed to do this, and pursuant to this agreement the deeds were drawn and executed. The deeds recite they are made in consideration of one dollar and natural love and affection. This is a sufficient consideration to support a conveyance from a parent to a child. (*Brock* v. *Stines,* 258 Ill. 346.) It was stipulated that if the son Herman were present his testimony would be to the same effect. Harry C. Leemon, an attorney who acted as notary public in taking the acknowledgments of appellee and his wife to the deeds, testified that at the time the deeds were executed they were read over by appellee and his wife, and that nothing was said about turning the property back when the debts and obligations of appellee were paid. The sworn allegations of the original bill filed by appellee are in sharp conflict with his testimony before the master.

In *Calkins* v. *Calkins,* 220 Ill. 111, the complainant by an amendment sought relief upon a different state of facts from that relied upon in the original bill. In that case the bill was not sworn to, and we there held that while a bill might be filed with a double aspect and that its various portions need not be consistent with each other, we pointed out that when a bill was filed upon one theory and later an amendment was added which sought relief different from that set up in the original bill, and upon a state of facts which, if true, must have been known to the complainant at the time of the filing of the original bill, the omission to aver such facts in the original bill was a circumstance to be taken into consideration in determining whether or not the

statements contained in the amendment were true, when they were denied by the answer and no explanation was offered for their omission from the original bill. In *Fowler* v. *Fowler*, 204 Ill. 82, we held that while the fact that a bill was verified by affidavit would not necessarily deprive complainant of his right of amendment, great caution should be exercised in allowing such amendment where the bill was sworn to, and that a complainant would undoubtedly be estopped from amending his sworn bill so as to contradict facts which he had sworn to positively as true in his original bill, unless he could clearly show that such statements were made by mistake. In the still more recent case of *Taylor* v. *Taylor*, 259 Ill. 524, we held that while amendments in chancery proceedings may be allowed, in the discretion of the court, when necessary to the proper administration of justice, we further said that "where the bill is sworn to, a complainant may be denied the right to amend by contradicting the facts sworn to unless he can show the statement was a mistake."

If in this case the conveyances to the children were by way of mortgages to secure them for money advanced and to be advanced, as testified to by appellee, these facts must have been known to him at the time the original bill was filed, and he should have predicated his right to relief on such facts instead of on the charges of fraud and misrepresentation contained in the original bill. He had the original bill in his possession for some days before subscribing and swearing to it, and if such allegations were not true he had ample opportunity for discovering it before swearing to the bill. In this condition of the record there can be no question in regard to where the greater weight of the evidence lies on this controverted point. Two of the sons testify, unequivocally, that their father offered to make the deeds if the children would furnish proper support to himself and wife for the remainder of their lives, and that all the sons agreed to do that. Appellee stands contradicted by

his own sworn statements,—the one in his bill, the other
before the master,—each of equal solemnity. The circum-
stances of the case further lend weight to the testimony of
appellant, Christian A. Rasch, and his brothers, and it is
admitted other witnesses, if present, would have corrobo-
rated those who testified at the hearing. If it had been
the intention of appellee only to make the sons secure for
the loans and advancements theretofore made, and it was
the understanding the remaining property was to be re-
conveyed to him as soon as all his debts and obligations
were paid, it hardly seems natural he would have divided
the property among all his children instead of selecting
some one of them to take charge of all of it under a trust
agreement. The latter seems the more natural thing to
have done, and is the thing that was done after the prop-
erty had been deeded to the children and their respective
rights ascertained. However, instead of doing that, the
property was deeded severally to each of the children in
approximately equal proportions, the homestead and fam-
ily residence being reserved and deeded to the daughter,
Rosalie, who was then making her home with appellee as a
member of his family. This indicates that it was the ex-
pectation of her parents to make their home with her, as
she had never contributed anything to their support and
maintenance, but, on the contrary, had been largely sup-
ported and maintained by them, and hence, as regards the
conveyance to her, it cannot reasonably be said that such
conveyance was made in consideration of past advance-
ments or in anticipation of any future loans to be con-
tributed by her. The clear weight of the evidence seems to
be upon the side of the children. The burden of proof was
upon appellee to show that the deeds, which were absolute
upon their face, were intended as mortgages, and this by
the most clear and convincing evidence. (*Rankin* v. *Ran-
kin*, 216 Ill. 132.) Loose, equivocal and self-contradictory
evidence will not be sufficient for this purpose.

There is another fatal objection to appellee's cause of action. The bill charges, and the answer admits, that after the conveyances were made to the children, respectively, and they had conveyed their interests to Christian A. Rasch, as trustee, an application was made by him to have the title of the land registered in him under the Torrens act, and that a decree was entered vesting in him, as such trustee, all right, title and interest in the property for the use and benefit of Herman, Theodore, Adolph and Rosalie Rasch, as set forth in the trust agreement, and that a certificate of title was issued to him vesting the title in him as such trustee, for the use and benefit of the parties to the trust agreement. Appellee was residing on the property at the time of those proceedings, and under the provisions of section 16 of that act was a necessary party to such proceedings, and in a collateral proceeding such as this it must be presumed that he was made a party. (*Field* v. *Peeples,* 180 Ill. 376.) Under the provisions of section 22 of the act appellee had a right to enter his appearance in such proceeding and file an answer and have his rights adjudicated therein. His omission to do so is his own fault. Under the provisions of section 26 of the same act any person having an interest in or a lien upon the land who has not been actually served with process or notified of the filing of such application or the pendency thereof, may at any time within two years after the entry of such order or decree, and not afterwards, appear and file a sworn answer to such application in like manner as if he had been summoned in the original proceeding, so that, even if appellee was not a party to the original application, by virtue of the provisions of this section he had the right to appear in that proceeding and have his rights adjudicated therein, and on his failure to do so must be held bound by that decree. No such action appears to have been taken by appellee and he is therefore bound by the decree, which vests all the right, title and interest in the property in Christian A. Rasch as trustee for his brothers

and sister, so that the same is a bar against appellee maintaining his present action.

It is also insisted that the court erred in allowing the master $451 as fees for taking the testimony and reporting the evidence, with his conclusions as to the law and the facts, and in enforcing payment of the same from the trust funds by contempt proceedings. The record shows that, all told, the master spent part of six different days in the taking of testimony, commencing at two o'clock in the afternoon of March 3, 16 and 24; at ten o'clock in the morning of March 13, when eight pages of testimony were taken; at two o'clock in the afternoon of March 8, when additional testimony was taken; and on March 15, when four pages of testimony were taken and seven exhibits introduced in evidence. In all some 674 pages of evidence, including exhibits, were taken and reported by the master. For this he was allowed fees at the rate of fifteen cents per 100 words for himself and in addition fees at the same rate for a stenographer, or $100.50 for himself and a like amount for the stenographer, or $201 for taking, transcribing and reporting the evidence. He was also allowed the further sum of $250 for five days spent in securing files, considering the evidence, hearing the arguments and making up his report. Under the statute masters in chancery in Cook county are allowed a fee at the rate of fifteen cents per 100 words for taking the evidence, and an additional allowance of not to exceed fifteen cents per 100 words for stenographer's services, where the master certifies that the employment of a stenographer was necessary, and such additional compensation for examining the questions in issue and reporting the same as the court may deem just. (Hurd's Stat. 1916, chap. 53, sec. 20.) In other counties in this State the master is allowed fees at the rate of only fifteen cents per 100 words for hearing the testimony, transcribing the same and reporting it to the court. Additional compensation is allowed to masters in Cook county for stenographer's ser-

vices, so that they are allowed fees at the rate of fifteen cents per 100 words for hearing and reporting the evidence, and we think that such fees are sufficient, except in extraordinary cases, to compensate them for all labor ordinarily required in investigating and determining all questions of fact in a case; and particularly is this true in a case such as the one at bar, where the issues were narrow and a clear preponderance of the evidence, both oral and documentary, is on the side of the defendants.

We think, also, the allowance of $250 for investigating the questions in issue was excessive. This is at the rate of $50 per day. In *Klekamp* v. *Klekamp,* 275 Ill. 98, we held that an allowance of $35 per day for such services was unreasonable, and we think the same is true in this case, and that the master should not have been allowed to exceed $100 for additional services rendered in examining all the questions properly in issue and reporting his conclusions to the court. Neither should the court have taxed these fees to the defendants before hearing the cause on its merits and ordered the same paid from the funds in the hands of appellant and enforced such order by contempt proceedings. Under the statute the master's fees are in the nature of costs and should be allowed and taxed as such, and any party who deems himself aggrieved either in respect to the amount allowed or as to the party against whom they are taxed has his right of appeal from that portion of the decree which fixes and taxes such costs, and appellant should not have been deprived of this right by the summary proceedings by contempt. The fact that appellant held the title to the property under a trust agreement with his brothers and sister did not alter the situation. They were not seeking to litigate any matters in relation to the trust. So far as appellee is concerned, he was not a party to the trust agreement, and the property as to him must be treated in all respects the same as it would have been had no such trust agreement been entered into and the

title to the property remained in the respective children, the same as when conveyed to them by him. Under the terms of the agreement by which the property was conveyed to the children it was to become their absolute property upon the payment of all the debts and obligations of the father and the furnishing to himself and his wife of proper support and maintenance during the remainder of their lives. There is no charge or claim that they were not doing this. The expenses of litigation, including the master's fees, are no part of the necessary or proper expenses of the support and maintenance of the parents by the children and were a charge for which the property conveyed to the children was not liable. To permit this property now in the hands of the children to be subjected to these subsequent debts and charges created by the father for purposes other than the necessary support and maintenance of himself and his wife would be to defeat the conveyance by allowing appellee to dissipate his estate upon matters entirely outside the terms of the agreement under which the property in controversy was conveyed to his children. For this reason no part of the costs which are properly chargeable against appellee can be ordered paid out of the trust funds in the hands of appellant, for the reason that such trust does not extend to after-incurred indebtedness of this character. The order allowing $750 to solicitors for appellee for services in this matter must be held erroneous for this reason, and for the additional reason that the statute makes no provision for the allowance of solicitors' fees in suits of this kind. We have repeatedly held that solicitors' fees cannot be taxed as costs against the unsuccessful party in a chancery suit in the absence of a statute making provision for the allowance of such fees as costs. *Hutchinson* v. *Hutchinson*, 152 Ill. 347.

The title to the property is vested in Christian A. Rasch, as trustee, for the use and benefit of the parties to the trust agreement, subject to the charge of properly maintaining

and supporting appellee and his wife for and during the remainder of their lives in a manner suitable and proper to their condition.

For the reasons given, the decree of the circuit court is reversed and the cause remanded to that court, with directions to require the master in chancery to re-pay to the clerk of the court, for Christian A. Rasch, as trustee, the amounts allowed him, less the fees chargeable to Christian A. Rasch for taking evidence in his behalf at the rate allowed by law; also to require the re-payment by solicitors for appellee of the solicitors' fee improperly allowed, and the clerk of the court to pay over to the said Christian A. Rasch, as trustee, said sums of money, together with all money received by him from the receiver, and to tax the costs of the proceedings to appellee, and to dismiss the bill of complaint.

*Reversed and remanded, with directions.*

---

(No. 11028.—Reversed and remanded.)
J. E. McCoy *et al.* Defendants in Error, *vs.* The Acme Automatic Printing Company, Plaintiff in Error.

*Opinion filed April 19, 1917.*

Appeals and errors—*perfecting an appeal is a waiver of pending motion to vacate the judgment.* Praying for and perfecting an appeal during the pendency of a motion to vacate the judgment waives the motion and deprives the trial court of jurisdiction to enter any order thereon, and the appeal is therefore from a final judgment notwithstanding the pendency of such motion.

Writ of Error to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. Harry Olson, Judge, presiding.

A. G. Dicus, for plaintiff in error.

Baker & Holder, for defendants in error.