(No. 19651.—

John M. Sheaff, Appellant, *vs.* Lucille Duplissis Spind-
ler *et al.* Appellees.

*Opinion filed April 17, 1930—Rehearing denied June 10, 1930.*

542

HERRICK, VETTE & PEREGRINE, for appellant.

McGILVRAY, EAMES, VAUGHAN & TILLEY, for appellees.

J. SCOTT MATTHEWS, for Clayton F. Smith, Registrar of Titles.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from a decree of the superior court of Cook county dismissing for want of equity an amended bill of John M. Sheaff to remove as a cloud on his title to the northeast quarter of the northwest quarter of the northwest quarter of section 6, town 36 north, range 15 east of the third principal meridian, in Cook county, a decree of the circuit court for registration under the Torrens law of title to the real estate in Joseph L. Duplissis, and the registration and certificates of title based on that decree. The original bill was filed on June 10, 1920. It was afterward amended, and as finally amended alleged title under a grant from the United States to the Illinois Central Railroad Company, which conveyed the land on March 10, 1870, to Ira Brown, who conveyed it to James W. Converse on October 21, 1886. Converse conveyed to the Illinois Land and Loan Company, a corporation, by deed dated July 29, 1902. The Illinois Land and Loan Company conveyed to Robert T.

Pearce on March 13, 1912, and Pearce on October 5, 1918, conveyed to Frank C. Caldwell, who conveyed to the complainant on October 1, 1919. The amended bill further alleged possession of the premises in the complainant's grantors and himself under the title alleged since September 15, 1891, as follows: That on the 15th day of September, 1891, Converse, under the claim and color of title existing in him, entered into the actual possession of said premises and constructed a continuous post-and-wire fence around the premises above described and herein involved; that immediately thereafter he leased all of said premises under written lease to a tenant, who immediately, and before May 1, 1892, entered thereupon and continued to farm and cultivate the premises under his lease and under the claim of title so existing in Converse, and has continued so to use the premises under Converse and his grantees in title above named, continuously since and down to the present day; that Converse, down to the time that he transferred his interest to the Illinois Land and Loan Company, and said company and its grantees in title, Robert T. Pearce, Frank C. Caldwell and your orator, have respectively and successively, under the claim and color of title existing in each of them, been and continued in the actual, adverse, open, hostile, notorious and exclusive and constant, continued and uninterrupted possession of all of said tract of land or premises and that the premises have been so continually possessed; that the possession of your orator ever since the actual entry in September, 1891, down to the present day, and his grantors in title, consisted of fencing the premises and leasing the same to tenants, who lived on the premises, farming the same and keeping trespassers from entering the same, and paying rent to your orator and his grantors in title for the same.

The cloud which the bill sought to remove originated with an application filed in the circuit court on March 9, 1911, by Joseph L. Duplissis to register the title in him.

The allegations of the amended bill show that the application for registration alleged that the premises were vacant and unoccupied, while the fact was that the Illinois Land and Loan Company was in open, notorious and exclusive possession at that time. The complainant in the present suit, and his predecessors in title, as alleged in the amended bill, had had actual and physical possession of the premises for more than twenty-eight years, and such possession had been open, continuous, exclusive and adverse to all the world and without interference from anyone during all of that period. Neither the Illinois Land and Loan Company nor any of its grantors or grantees was made a party to the proceedings for registration of title or had any legal or actual notice thereof, and the proceedings constituted a fraud against the Illinois Land and Loan Company and were without due process of law. Duplissis fraudulently aud untruthfully made his affidavit filed in the registration proceedings, stating that the premises were vacant and unoccupied and that no one other than he had any interest in the premises, and at the time of filing the affidavit he knew that the Illinois Land and Loan Company was in actual, open, notorious and exclusive possession of the premises under its claim of title, and the sole purpose of filing the affidavit was to induce the court to grant a decree without making the Illinois Land and Loan Company a party and to divest it of its property without due process of law. The bill further showed that the county officer having charge of the examination of titles sought to be registered, or someone acting under his authority, fraudulently failed to make the complainant's grantors in title, or any of them, party or parties to such registration proceedings; that if any evidence was submitted to the examiner, master or other officer of the court before whom the proceedings were purported to have been had, pertaining to the title and possession of the premises, such evidence, in so far as it at-

tempted to defeat the title to the premises in the Illinois Land and Loan Company, was untrue and false.

A decree was entered on April 21, 1911, directing the registration of title to the premises in Duplissis, but, the amended bill alleged, it was without jurisdiction of and was void as against the Illinois Land and Loan Company and its successors in title. The registrar of titles, relying upon that decree, issued to Duplissis four certificates of title, which together covered the premises and which remain uncanceled. Neither the complainant nor his grantors in title had any legal or actual notice of the filing of the registration proceeding until shortly before the filing of the bill in this case.

Minnie Krug, individually and as trustee in two trust deeds executed to her by Duplissis on March 22, 1916, and registered on March 30, 1916, as documents 58,361 and 58,363, each to secure a note for $1250 payable to her, Henry Krug as successor in trust, and the unknown owners of each of the notes, together with the unknown owners of the land, and the registrar of titles, were made defendants to the bill.

The defendants decline to bring an action at law to test their claims to title. The facts showing the possession of the complainant and his predecessors in title rest largely in parol and the evidence to show such facts is apt to be lost in the course of time. The complainant is unable to sell his property and give a merchantable title without the aid of a court of equity in canceling and removing the adverse claims.

The prayer of the bill, so far as material, was: "(d) that your orator may be found and decreed to be the owner in fee simple absolute of the said premises or real estate; (e) that the defendants, and each of them, and all parties claiming under them, may be formally held and decreed to be estopped to question the said title and ownership or to question the facts in reference to such possession, claim and title; (f) that said defendants, and all persons claiming

by, through or under them, may be restrained and enjoined from interfering with the said possession of your orator or any and all persons claiming under him; (*g*) that your orator may be secured and continued in his possession of said real estate by decree of this court; (*h*) that all of the proceedings had under said cause No. LR4114 in the circuit court of Cook county, Illinois, be declared null and void and that the same be vacated and set aside; (*i*) that the said certificates issued by the said registrar of titles be declared null and void and that they be canceled and surrendered and the said Joseph L. Duplissis, and all persons holding or claiming by, through or under him, be enjoined from claiming any interest of any kind in the said premises or executing any conveyances or deeds of any part of said premises."

Duplissis demurred to the bill as finally amended. The Krugs demurred to the original bill but did not take any other action in the case. The demurrer of Duplissis was sustained on November 28, 1921, and the amended bill was ordered dismissed as to him. This order was modified on December 3, 1921, by adding the following: "Appeal prayed and allowed to the Supreme Court of the State of Illinois, which appeal is to be perfected at the time of the final disposition of this cause." The registrar of titles answered on June 12, 1922, denying all the allegations of the bill except that Duplissis filed application for registration of title and that a decree was entered therein and certificate of title issued to Duplissis.

The cause stood thus until February 4, 1928, when additional counsel were given leave to enter their appearance as associate counsel for Duplissis. On February 7, 1928, counsel for the complainant was given leave to withdraw his appearance and the counsel now appearing for the complainant were given leave to enter their appearance as counsel for him. Duplissis died about March 2, 1928, leaving a will, which was admitted to probate. Letters testamentary

issued to his daughter, Lucille Duplissis Spindler, and the Woodlawn Trust and Savings Bank, and upon the suggestion of the complainant, they, together with the other persons interested in the distribution of the estate, were substituted as defendants in the place of Duplissis. They were served with summons or by publication of notice, and the executor and executrix, the trustees appointed by the will, Lucille Duplissis Spindler individually and Maud C. Duplissis, the testator's widow, entered their special and limited appearance for the sole purpose of contesting the jurisdiction of the court over them. The successor in office of the registrar was also substituted for him and filed an answer denying the allegations of the bill. The complainant moved to vacate the order of November 28, 1921, sustaining the demurrer of Duplissis as to him. The cause was ordered placed on the contested motion calendar, and on February 25, 1929, the court entered the following decree, from which the complainant appealed: "The motion of the complainant this day made to vacate the order heretofore entered sustaining the demurrer of the defendant, Duplissis, to the bill of complaint as amended, and dismissing the bill of complaint as against the defendant, Duplissis, is hereby denied. On motion of complainant the bill of complaint as amended is hereby dismissed as to the defendant the village of Burnham. Thereupon, the complainant having elected to stand upon his bill of complaint as amended and it appearing to the court from said bill as amended that the complainant has no cause of action nor equities against any of the defendants hereto, on the court's motion and without hearing on the issues raised by answer of registrar of titles, it is ordered, adjudged and decreed that the bill of complaint as amended be and hereby is dismissed for want of equity as to all of the defendants, with costs to the defendants."

After the filing of the transcript of the record by the appellant, the appellees, executor and executrix of the will

of Duplissis, his widow and his daughter, distributees of his estate, suggested a diminution of the record, and on their motion were allowed to file the transcript of two general orders of the executive committee of the superior court, the first of which, made on June 5, 1923, ordered "that all chancery cases commenced previous to August 1, 1922, and now pending in the superior court, be put at issue on or before July 7, 1923, and in default of the same being done, such cases shall be stricken from the docket for want of compliance with this order at a general call to be commenced on Monday, July 9, 1923, at ten o'clock A. M., and continued from day to day thereafter by Judge Denis E. Sullivan in court room 811, unless good cause be shown by affidavit prior to the date of the beginning of such call why this order was not complied with. It is further ordered that in such general call all cases shall be stricken from the docket in which no proceedings of record have been taken since August 1, 1922, and prior to the entry of this order, unless good cause to the contrary be shown by affidavit." The second order, made on July 9, 1923, provided that "in all cases stricken from the docket in the general call commenced on July 9, 1923, the same may be reinstated on the docket at any time between September 16, 1923, and December 31, 1923, upon notice, without any affidavit of good cause being required." On July 11, 1923, the following order was entered in this cause: "It is hereby ordered that this cause be referred to a master within ten days, and in default thereof the same shall be stricken from the docket as provided in the general order." The general order mentioned is that of June 5.

The appellees, executor and executrix of the will of Duplissis, and his widow and other distributees of his estate, have assigned as cross-errors that the court erred in every order entered after July 21, 1923, and that it erred and was without jurisdiction to enter the order of May 1, 1928, substituting for Duplissis, as defendants, his execu-

tors and the distributees of his estate, and erred and was without jurisdiction to appoint a guardian *ad litem* for the minors so substituted.

It is argued in support of the cross-errors that (1) the order of November 28, 1921, dismissing the bill as to Duplissis, although not an appealable order, was final as to him, and the trial court could not enter the order of substitution of his representatives upon the suggestion of his death; (2) that the order of July 11, 1923, had the effect of striking the cause from the docket on July 22, 1923, and the trial court had no power to enter any order in the cause subsequent to July 21, 1923, without first entering an order of reinstatement; and (3) that the only question preserved is the ruling of the trial court on the motion to vacate the order of November 28, 1921.

The third proposition is answered by the case of *Foote* v. *Yarlott,* 238 Ill. 54, in which one of several parties to a bill for the foreclosure of a mortgage filed a plea setting out her interest, while other defendants answered. The court having sustained the plea and dismissed the bill as to the defendant filing it, the cause was referred to a master, and later a decree was entered foreclosing the mortgage but not including the interest of the defendant whose plea had been sustained. Upon appeal by the complainant from this decree it was held that the order sustaining the plea was interlocutory and not appealable; that there can be no appeal until there has been a complete disposition of a cause as to all parties, except where great hardship or a denial of justice would result from not allowing the appeal; that the case did not come within that exception and there could be no appeal until the final decree, when the whole record, including the order sustaining the plea and the dismissal of the bill, might be brought up for review. This case followed the previous decisions of *Dreyer* v. *Goldy,* 171 Ill. 434, *Pain* v. *Kinney,* 175 id. 264, and *Brodhead* v. *Minges,* 198 id. 513, which were cited in the opinion. In addition

to them may be cited the cases of *Bucklen* v. *City of Chicago,* 166 Ill. 451, and *People* v. *Banks,* 285 id. 137. This principle of the interlocutory character of the order of dismissal as to Duplissis also answers the first proposition of the appellees as to their substitution in place of Duplissis. His death before the final decree did not abate the action, but the statute provided that his death might be suggested on the record and the cause of action might be defended by the heir, devisee, executor or administrator to whom the cause survived.

The order of June 5, 1923, did not purport to strike any case from the docket but provided that all chancery cases commenced previous to August 1, 1922, should be put at issue on or before July 7, 1923, and in default of the same being done such cases should be stricken from the docket for want of compliance with the order, at a general call to be commenced on July 9, 1923, by Judge Denis E. Sullivan, unless good cause should be shown prior to the date of the beginning of the call why the order was not complied with, and that in such general call all cases should be stricken from the docket in which no proceeding of record had been taken since August 1, 1922, and prior to the entry of the order, unless good cause to the contrary should be shown. This order was not self-executing. It contemplated another order to be made at the call to be commenced on July 9 unless good cause should be shown to the contrary by affidavit, and there is nothing in the record indicating that any order was made striking this cause from the docket. The order of July 11 that the cause be referred to a master within ten days and in default thereof the same should be stricken from the docket, as provided in the general order, did not cause the case to be automatically dropped at the expiration of ten days but required an order of the court to strike the cause for the default, if default occurred.

It is argued on behalf of the appellees that the bill is an original bill in the nature of a bill of review to impeach

a decree for fraud. That it cannot be maintained as a bill of that character is clear for two reasons: First, the inflexible rule is that both a bill of review proper and an original bill in the nature of a bill of review must be brought in the same court in which the decree sought to be reviewed was rendered The superior court of Cook county has no jurisdiction to entertain a bill to review and reverse a decree of the circuit court. (*Mathias* v. *Mathias,* 202 Ill. 125.) Second, persons not parties to the original proceedings and unaffected by the decree cannot maintain a bill of review. (*Goodrich* v. *Thompson,* 88 Ill. 206; *Glos* v. *People,* 259 id. 332.) The complainant was not a party to the registration proceeding, and because he was not a party is not affected by the decree. His bill is a bill to quiet his title against the cloud upon it caused by the decree of registration.

It is contended on behalf of appellees that the amended bill is defective for its failure to set out the proceedings and the record of the decree, and the argument is made that in a bill in the nature of a bill of review to set aside a decree on the ground of fraud, not only must the fraud and the facts constituting it be alleged and proved but the bill of complaint must set out the record of the decree and the proceedings leading thereto, either in the bill itself or in exhibits attached to the bill, and a number of cases are cited in regard to the allegations required in bills of review. They are not applicable to this case, which is neither a bill of review nor an original bill in the nature of a bill of review. The appellant is not seeking to have the decree of the circuit court reversed or modified and is not seeking a rehearing of the cause. By his allegations he charges that he was never notified of the registration proceeding, as required by the Registration law; that he was not a party to the proceeding; that the decree rendered was void as to him and is subject to collateral attack whenever and wherever it may be brought in question. The bill sets out

the complainant's title from the government in detail and at length; the entry of his remote grantor into possession on September 15, 1891; the continuous possession, after such entry, of the successive grantors of the appellant; the appellant's own possession succeeding them and the character of such possession; the application by Duplissis to register title under the Land Titles act, alleging that the premises were vacant and unoccupied although the Illinois Land and Loan Company, a corporation, and one of the appellant's predecessors in title, was in the open, notorious and exclusive possession of the property; that neither the Illinois Land and Loan Company, nor any or either of its grantors or grantees, was made a party to the registration proceeding or had any notice thereof; that Duplissis fraudulently swore to an affidavit filed in the cause that the premises were vacant and unoccupied and no other party than he had any interest in them; that he knew when he filed the affidavit that the Illinois Land and Loan Company was in the open, notorious and exclusive possession of the premises and that a decree was entered directing the registration of the title in Duplissis.

The purpose of the bill is to state the complainant's cause of action. When he has shown his own title he is not obliged to show his opponent's defense or the title by which he claims. That is for the defendant to show, and he may make his defense by demurrer, admitting the facts alleged in the bill but questioning their sufficiency in law to entitle the complainant to relief, or by answer denying the allegations of the bill or alleging other facts. If he demurs, the consideration of the chancellor, or of this court on review, is limited to the facts stated in the bill. Duplissis demurred. The registrar answered, neither admitting nor denying any of the allegations of the bill but calling for strict proof of them, and this amounted to a denial of all the allegations of the bill. The court, however, upon the motion to set aside the order sustaining the demurrer, de-

nied it, and then of his own motion, without any consideration of the issue of fact, dismissed the bill. This, although informal, was a proper disposition of the case after the demurrer had been sustained, for if the bill did not state a cause of action no decree could be rendered on it in favor of the complainant.

We have now arrived at the real question in the case, Did the bill state a cause of action?

The bill shows title in the complainant in fee simple by a chain of conveyances deducible of record from the United States, and the demurrer admits this title. The appellant also claims title under the twenty-year Statute of Limitations by actual, adverse, hostile and uninterrupted possession from the original entry in September, 1891, to the filing of the bill. The allegations of the bill are admitted by the demurrer and they showed title under the statute. Such a title, acquired by adverse possession under the Statute of Limitations, may be used as a basis for a bill in equity to remove cloud and quiet title, or may be enforced by an action of ejectment against a third party or the original owner, who has succeeded in obtaining possession after the bar of the statute was complete. *Pearce* v. *Wright,* 284 Ill. 221; *Bugner* v. *Chicago Title and Trust Co.* 280 id. 620; *Kepley* v. *Scully,* 185 id. 52; *Fagan* v. *Bach,* 253 id. 588; *Gerbracht* v. *County of Lake,* 328 id. 399.

It is admitted on the record that on March 9, 1911, when the application to register the title was filed in the circuit court, the Illinois Land and Loan Company was in possession of the premises under a valid title of record, and had, together with its predecessors in title, been in such possession for more than nineteen years; that such possession was known to Duplissis. The application alleged that the premises were vacant and unoccupied, and the Illinois Land and Loan Company was not made a party to the proceeding for registration and no notice of any kind was given to it.

554

Although it is admitted that the Illinois Land and Loan Company was the owner in fee simple of the land in controversy and was not a party to the registration proceeding or notified in any way of its pendency, it is contended by the appellees that it is bound by the decree to which it is a stranger, and that by virtue of it it has ceased to be the owner of the land and Duplissis and his heirs have become the owners. On the other hand, the appellant contends that the decree of registration was void. The proceeding to register title is a chancery proceeding, and, except as otherwise provided by statute, is governed by the rules of chancery practice. (*Donnelly v. Dumanowski,* 329 Ill. 482.) The statute prescribes with particularity the manner of bringing land under the act. The application must be made to any court having chancery jurisdiction in the county where the land is situated, and may be made by the owner of the land in person or by an attorney in, fact authorized for that purpose. Section 11 of the act requires the application to be in writing, signed and sworn to by the applicant or his authorized agent, and to set forth, among other things, whether the land is occupied or unoccupied, and, if occupied by any other person than the applicant, the name and post-office address of such occupant and what estate or interest he has or claims in the land; whether any other person has or claims any interest in the land, in law or equity, in possession, remainder, reversion or expectancy, and if any, set forth the name and post-office address of every such person and the nature of his estate or claim. When the place of residence of any person whose place of residence is required to be given is unknown, it may be so stated if the applicant will also state that upon diligent inquiry he has been unable to ascertain the same. All persons named in the application shall be considered as defendants therein, and all others shall be included and considered as defendants by the term, "all whom it may concern." Under this section it is manifest that all persons

having or claiming any interest in the land must be made parties to an application for registration of the title, and that a person having or claiming any interest in the land whose name and address are known or can be ascertained upon diligent inquiry cannot be made a party to a petition by adding as parties "all whom it may concern." *Ambos* v. *Glos,* 314 Ill. ·438.

The arguments of counsel on each side have taken rather a wide range in the discussion of questions of the constitutionality of various sections of the act and the question of due process of law, none of which are necessary to be considered in the determination of the case. Neither is it necessary to determine whether the proceeding for the registration of title authorized by the act is a proceeding *in rem, quasi in rem* or merely *in personam.* We have held it to be a chancery proceeding, and its general purpose is plain—to establish a system of registration of titles to land under which the registrar's certificate shall be at all times conclusive evidence of the title. Any owner of land may, by pursuing the course directed by the statute, bring his land under the act, and the question in this case is not as to the constitutionality of the act or any part of it, but is whether Joseph L. Duplissis, in his attempt to have the land registered, followed the course directed by the act. It is an elementary principle of law, for which the citation of authority is superfluous, that no adjudication of a court which may deprive a person of his liberty or property is of any validity against him unless it has been rendered with due process of law, which requires notice and an opportunity to be heard. In proceedings strictly *in rem* the seizure of the *res* and the exhibition of the warrant to those in charge may be sufficient, but in proceedings *quasi in rem* authorized by statute, and in proceedings *in personam,* the notice given must be that required by statute, whether personal service of summons, publication of notice or other form of substituted service. The State has control of the tenure of prop-

erty and the method of transfer and evidence of titles. Whether the sections of the Torrens law which declare the effect of the decree of registration, the limitation of actions or the effect of the decree as evidence are constitutional or not, they have no application to this case. The act itself imposes the kind of notice required to be given to the Illinois Land and Loan Company before the court could enter a decree affecting its interest in the land or claim to it; it was required to be made a party because it was known by the applicant to be in the possession of the land by its tenants; its deed showing its title was on record; its name, at least, could have been ascertained by the applicant upon diligent inquiry, and the applicant did not state that its residence could not also be ascertained by the same inquiry.

The appellees rely upon the case of *Rasch* v. *Rasch*, 278 Ill. 261, as authority that the decree of registration is conclusive upon the appellant by virtue of section 26 of the Registration act, which provides that any person having an interest in the land who has not been actually served with process or notified of the application, may, at any time within two years after the entry of the decree, and not afterwards, appear and file his sworn answer, whereupon the court may proceed to review the decree and enter such order in the case as shall be according to equity. That case held that in a collateral proceeding it must be presumed that one whom the statute required to be made a party was made a party, and proceeded to a discussion with that presumption as a basis. Here the allegation in a direct attack is that a necessary party was omitted from the proceedings, and the *Rasch case* has no application to the situation in this case.

The decree having been rendered without complying with the statutory requirement in regard to notice to the claimant, the Illinois Land and Loan Company, was void as to it. Section 26 does not apply to that company. It provides that "the order or decree so made and entered

shall, except as herein otherwise provided, be forever binding and conclusive upon all persons, whether mentioned by name in the petition or included in 'all whom it may concern.'" The "all persons" referred to in this sentence are the parties "whether mentioned by name in the petition or included in 'all whom it may concern.'" This last phrase limits the previous words "all persons" and shows that the language was intended to apply only to all persons who were parties in the proceeding. So section 39, which provides that the certificate of the registrar shall, "until the expiration of the time herein limited to bring some action or to contest the title of the registered owner, be in all courts and places *prima facie* evidence that the provisions of the law have been complied with, and that such certificate of title has been issued in compliance with a valid order or decree, and that the title to the land is as therein stated, and after the expiration of such time limited shall be conclusive evidence of the same facts," refers only to the persons made parties to the bill. Section 44 provides that in any action or proceeding brought for ejectment, partition or possession of land, the certificate of title of a registered owner shall, except as to any person not bound by the order or decree of the court, or by some limitation in the act or in some other statute contained, be held to be conclusive evidence that such registered owner has a good and valid title to the land. This expressly excepts any person not bound by the order or decree of the court, and these sections, taken together, show that the legislature did not intend, in passing the act, to attempt a modification of the rule which required notice before judgment by a court.

The appellees have argued that the complainant was guilty of *laches,* but that argument is without force. "A limitation may be placed upon the time within which a person who has a mere right of action shall bring it, but 'limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he

claims.'—Cooley's Const. Lim. p. 366." (*People* v. *Simon*, 176 Ill. 165.) The same rule applies to *laches*.

The decree of the superior court is reversed and the cause is remanded, with directions to set aside the order of November 28, 1921, sustaining the demurrer of Duplissis to the bill and to overrule that demurrer and proceed to a hearing of the cause on the issue raised by the answer. The appellees who have not answered the bill should be granted leave to answer the bill if they so desire.

*Reversed and remanded, with directions.*