(No. 23155.—▆▆▆▆▆▆▆
THE CHICAGO TITLE AND TRUST COMPANY, Trustee, Appellee, *vs.* REGINALD C. DARLEY *et al.* Appellants.

*Opinion filed February 19, 1936—Rehearing petition stricken April 8, 1936.*

198

Wilson, J., dissenting.

Thomas J. Courtney, State's Attorney, Benjamin F. J. Odell, and Thomas J. Matousek, (John B. Skinner, of counsel,) for appellants.

James J. Kilgallon, for appellee.

Mr. Justice Shaw delivered the opinion of the court:

The Chicago Title and Trust Company, acting as trustee, filed its bill of complaint in the superior court of Cook county, seeking to quiet its title to forty acres of land lying along the Calumet river. Within the boundaries of this forty-acre tract lie nine lots in what is known as "Wisner's subdivision," title to which had been registered by decree of court on September 7, 1904, under the provisions of the Torrens act. The superior court entered a decree in accordance with the prayer of the bill and ordered the Torrens certificate canceled. The appellants who claim under the Torrens certificate have appealed directly to this court.

The trial court sustained the findings of the master *in toto* and made certain findings of fact based on that report. Those findings were as follows: that the complainant and

its predecessors in title, Eva Newell Mecartney, Harry S. Mecartney and the Illinois Land and Loan Company, have been in the actual, open, continuous, hostile, adverse and notorious possession of the premises and have maintained fences around the land and have used the same for farming purposes, and to the extent that such premises could be used, continuously from about the year 1897; it was found that such actual, open, continuous, adverse, hostile and notorious possession of such land was maintained by the Illinois Land and Loan Company from about the year 1897 to January 20, 1915; by Harry S. Mecartney, grantee of the Illinois Land and Loan Company, from January 20, 1915, to his death on August 21, 1927; by Eva Newell Mecartney, widow and sole devisee of Harry S. Mecartney, from August 21, 1927, to the date of her conveyance of the land to complainant, as trustee under its trust known as No. 11406, and by the complainant until the date of the filing of the bill of complaint herein. The court further found that on or about July 27, 1903, one Louis Boisot filed an application in the circuit court of Cook county under the Torrens act seeking registration of title to the nine lots in Wisner's subdivision above mentioned, of the forty acres in question; that these lots, according to the plat of Wisner's subdivision, are located near the southeast corner of the forty-acre tract and within the fences, enclosing the land, which had been maintained by complainant and its predecessors in title as above set out; that Wisner, who purported to subdivide the land, never had any title thereto; that the application filed by Boisot, through whom appellant Darley claims title, alleged that the premises were vacant and unoccupied, but that at the time of the filing of the application the Illinois Land and Loan Company was in full, open, complete, notorious and exclusive possession of such quarter-quarter section; that neither the Illinois Land and Loan Company, nor its tenant, George Kleinman, then in actual possession of the land, was made

a party to the land registration proceeding, or had any legal or actual notice thereof; that a decree was entered in the land registration proceeding on September 7, 1904, directing registration of the title to such lots in Louis Boisot; that the proceedings were taken and the decree entered without jurisdiction of the Illinois Land and Loan Company or George Kleinman, and, as against the Illinois Land and Loan Company, and as against complainant, successor to the title of the Illinois Land and Loan Company, the proceedings and decree were null and void. The decree further found a clear record title in complainant as to all of the forty acres, except the nine lots in question, and a valid title, by prescription, as to those lots.

The evidence shows the property in question to be a part of an eighty-acre tract which has been continuously enclosed by a fence since 1897, except as to a part of it where the Calumet river forms a natural boundary. The record does not disclose who first built this fence, but does indicate clearly that the complainant and its predecessors in title have maintained it since the time stated. Where the fence joins the river it is built some twenty feet out into the stream. Without reviewing the evidence in detail, it is sufficient to say that it fully supports the trial court's finding of facts. The appellant Darley, who was defendant in the court below, introduced no evidence except his Torrens certificate. There is no evidence of any sidewalk, boundary marker or other indication of any part of the land being laid out in lots.

The record shows the entire eighty-acre tract to be low and swampy, entirely unimproved, except for the fences above mentioned, and of a character not suitable for general agricultural purposes. Some parts of it are high enough to produce wild hay, which seems to have been the only crop regularly harvested from it, while other parts produced nothing but bulrushes and cat-tails, which at times were cut and sold to a cooperage factory. There was also

evidence that the premises were at times used for pasture and that sometimes baling machinery was brought on the ground and the hay baled there. The nearest houses seem to have been located about a quarter of a mile away. The appellants contend that the court erred in failing to find that the Torrens certificate was a complete bar to the suit by complainant, it being urged by them that the Illinois Land and Loan Company, through which complainant claims title, was a party to the registration proceedings under the designation of "All whom it may concern."

A considerable portion of the brief for the appellants is devoted to an attack upon the sufficiency of the complainant's evidence. This argument, however, is of little force, because, as above pointed out, the defendant offered no evidence of his own, and because there is undoubtedly sufficient evidence in the record to sustain the finding of the court, in the absence of evidence to the contrary. Thus, it is undisputed, that the entire eighty acres was completely fenced as long ago as 1897. There is no dispute that the Illinois Land and Loan Company, its agents and tenants, its successors in title and their agents and tenants, have kept this fence constantly in repair since 1897, and have during all that time devoted the entire property to the best use of which it appears capable. The question to be decided thus inevitably reduces itself to a determination of whether the registration proceedings were valid as against the complainant's predecessors in title, or, as found by the trial court, so entirely void for want of jurisdiction as to be ignored.

A fence is notice of actual occupancy and it is actual occupancy that creates the bar of the Statute of Limitations. Such improvements, or acts of dominion over land, as will indicate to persons residing in the immediate neighborhood, who has the exclusive management and control of the land are sufficient to constitute possession. (*Augustus* v. *Lydig*, 353 Ill. 215; *Bugner* v. *Chicago Title and Trust Co.* 280

id. 620; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Nugent,* 152 id. 119; *Kinder* v. *LaSalle County Carbon Coal Co.* 310 id. 126; *Davis* v. *Haines,* 349 id. 622.) The fact that the person who exercised control over the land did not live on it does not imply that he was not in possession thereof. (*Eddy* v. *Gage,* 147 Ill. 162.) In determining what constitutes adverse possession much depends upon the uses to which the land may be put, and, to be adverse, the possession is not required to be more full than the character of the land admits. As we said in *Davis* v. *Haines, supra,* "What acts constitute adverse possession are necessarily varied, depending upon the nature, locality and use to which the property may be applied. * * * The rule is, that such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who is exercising the exclusive control and management of land will be deemed sufficient to constitute possession, and where property is so situated as not to permit the erection of permanent, useful improvements, a claim of ownership evidenced by public acts of ownership, such as one would exercise over property of that character which he claimed in his own right and would not exercise over property which he did not claim to own may constitute actual possession."

Applying these principles to the established facts, we find the trial court entirely justified in its conclusion. Complainant's predecessors in title evidently did everything with this land that could be done with it. They fenced it in and devoted it to the best purposes for which it was suitable. They pastured live stock on it and regularly cut, baled and sold the hay. It was not suitable for general farming and we can think of nothing more that could have been done to evidence their intention to exercise dominion over it. This being true, we are brought to the single point of determining whether or not those predecessors in title were such as could be bound by the general designation of "all

whom it may concern," in the land registration proceedings, or if, on the other hand, it was necessary to make them parties and serve them by name.

In a land registration proceeding under the Torrens act, a person having or claiming any interest in the land, whose name and address are known, or can be ascertained upon diligent inquiry, cannot be made a party as "all whom it may concern." (*Sheaff* v. *Spindler,* 339 Ill. 540.) The statute prescribes the procedure to be followed and requires, among other things, that the application shall state whether the land is occupied or unoccupied, and, if occupied by any other person than the applicant, the name and post-office address of such occupant and what interest or estate he has or claims in the land. The most casual observance of this property would have disclosed the fences, and the least diligent inquiry would have produced the information that the land was at times pastured and regularly cut for hay. Notwithstanding these obvious facts, the application for registration which resulted in appellants' claim to title, stated the land to be entirely vacant and unoccupied. The case of *Sheaff* v. *Spindler, supra,* is very close, on its facts, to the one at bar and is controlling of this one. Appellants strongly urge upon us that that case should be overruled or modified, but we can find no occasion for doing so. The trial court correctly held that complainant's predecessors in title were not properly made parties to the registration suit under the heading of "all whom it may concern," and it necessarily follows, as held in the *Sheaff case,* that as to them, the registration proceeding was a nullity and to be ignored.

Appellants also argue that in a bill to set aside a decree on the ground of fraud because of a want of service on the party complaining, the bill must allege such facts as would show that a different result would have necessarily been produced if such facts had been heard on the former

hearing. The cases of *Boyden* v. *Reed,* 55 Ill. 458, and *French* v. *Thomas,* 252 id. 65, are relied upon. The soundness of this position may be conceded without affecting the result of this decree, as this is not a suit to set aside a former decree, but a suit by complainant to establish its own title, and the result is reached by ignoring the former decree to which the complainant and its predecessors in title were not parties. The same point was raised and answered in the same way in *Sheaff* v. *Spindler, supra.* It is also argued that complainant and its predecessors in title were charged with notice of the land registration proceedings, but the point is overlooked that that proceeding was notice only to subsequent purchasers, and not to those who were in actual possession at the time of the proceeding. (*Doolittle* v. *Cook,* 75 Ill. 354.) Possession of property is equivalent to the recording of a deed, (*German-American Bank* v. *Martin,* 277 Ill. 629,) and the possession of a tenant is notice of the possession of his lessor. (*Carnes* v. *Whitfield,* 352 Ill. 384.) To hold as appellants argue, would be to give indirect validity to that which was and is totally void.

In addition to the foregoing matters the briefs indulge in a wide discussion as to the purpose and intent of the legislature in passing the Torrens act, and other matters which are not essential to a decision of this case. The trial court followed the case of *Sheaff* v. *Spindler, supra,* to which we adhere, and, with the established facts of possession before it, could have arrived at no other conclusion.

The decree will be affirmed. *Decree affirmed.*

Mr. JUSTICE WILSON, dissenting.